# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| MELISSA DOUGLAS | |
| Plaintiff, | Civil Action No.: |
| v. | |
| | 5:21-cv-00195 |
| TRACTOR SUPPLY COMPANY | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff Melissa Douglas, and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended. Plaintiff alleges that Defendant Tractor Supply Company subjected Plaintiff to discrimination based on sex, pregnancy, and disability, including through its failure to provide a reasonable accommodation, respectfully showing the Court as follows:

## JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was employed, and the events underlying this action occurred in Macon, Bibb County, Georgia, which is located within this judicial district.

## PARTIES

3.

Plaintiff Melissa Douglas (hereinafter, "Plaintiff" or "Douglas") is a citizen of the United States and a resident of Georgia. At all times relevant to this suit, Ms. Douglas was employed by Defendant Tractor Supply Company

4.

At all relevant times, Ms. Douglas was considered a covered, non-exempt employee under Title VII of the Civil Rights Act and the Americans with Disabilities Act.

5.

Defendant Tractor Supply Company (hereinafter, "Defendant"), is a foreign profit corporation, incorporated under the laws of the State of Delaware, with its principal office located at 5401 Virginia Way, Brentwood, Tennessee 37027. Defendant may be served with process upon its registered agent, The Corporation Company (FL), located at 106 Colony Park Drive, Suite 800-B, Cumming, Forsyth County, Georgia 30040-2794.

6.

Defendant is engaged in interstate commerce, has an annual revenue in excess of $500,000.00, and has employed in excess of 500 employees, working for at least 20 calendar weeks in 2019 and in prior calendar years.

7.

Defendant is a covered employer within the meaning of Title VII of the Civil Rights Act and the Americans with Disabilities Act.

## STATEMENT OF FACTS

8.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 7, as if the same were set forth herein.

9.

Ms. Douglas began her employment with Defendant in or about July 17, 2019.

10.

Ms. Douglas worked for Defendant as a DC Team Member, and specifically a Material Handler, at Defendant's Distribution Center located in Macon, Georgia. As a Material Handler, Ms. Douglas was responsible for receiving instructions from a dispatcher, and then picking the merchandise identified by the dispatcher from the warehouse shelves and setting them aside for distribution.

11.

Indeed, Material Handlers are sometimes required to lift heavier items, and some items require the use of a ladder in order to be retrieved from upper shelves. However, Material Handlers are expected to operate certain equipment such as a lift truck to accomplish these tasks.

12.

It was also common for Material Handlers to work together in teams of two people.

13.

Ms. Douglas was qualified for her position, her performance was exemplary, she was never subjected to any disciplinary actions, and Ms. Douglas prided herself in her professionalism and work ethic.

14.

On September 3, 2019, Ms. Douglas was working an overnight shift when she passed two blood clots when she was working.

15.

Ms. Douglas' pregnancy-related medication condition is a type of bleeding disorder that specifically results in periods of uncontrollable bleeding, pain, aching, and cramping, decreased stamina and fatigue, overall body weakness, and risk to the health and safety of the mother and unborn child.  Blood clotting associated with pregnancy is a physical impairment that substantially limited major life activities such as walking, standing, lifting, bending, and working.

16.

Defendant was aware of Ms. Douglas' medical emergency and her medical condition because Defendant advised Ms. Douglas to leave work and report to the emergency room at a local hospital at approximately 9:00 pm that evening.

17.

On the next morning, September 4, 2019, one of Defendant's Human Resources representative contacted Ms. Douglas by telephone and instructed Ms. Douglas to have her doctor complete a "Fitness for Duty Certification."

18.

On the same day that Ms. Douglas was released from the hospital, she had her medical provider complete the Fitness for Duty Certification, stating that Ms. Douglas may return to work on September 5, 2019.

19.

Indeed, the next day, September 5, 2019, Ms. Douglas returned to work with her doctor's note in hand, and Ms. Douglas immediately went to see HR Generalist Whitney Herman (hereinafter, "HR Generalist Herman").

20.

Upon review of the Fitness for Duty Certification, HR Generalist Herman noticed that Ms. Douglas' doctor had requested that Ms. Douglas be provided with short breaks and that she not be required to lift in excess of 25 pounds as a result of Ms. Douglas' pregnancy related condition.

21.

In response, HR Generalist told Ms. Douglas that she did not know whether Ms. Douglas' doctor's restrictions could be accommodated.

22.

HR Generalist Herman also commented on the fact that the doctor said that Ms. Douglas should not be required to stand for more than eight (8) total hours in one day, but that this was not going to work because Ms. Douglas was assigned to a ten (10)-hour shift.

23.

While Defendant's job description indicates that there may be extended periods of standing, there is nothing to suggest from the job description, or Ms. Douglas' actual duties, that her position requires a person to stand for the entire shift.

24.

Moreover, Ms. Douglas' physician recommended that Ms. Douglas be given one, fifteen (15) minute break every two-and-a-half (2 ½) hours, which was only a slight modification from Defendant's policy that allowed employees to have the same break once every three (3) hours.

25.

Finally, HR Generalist Herman stated, "just looking at this, we can't accommodate this."

26.

As a result, HR Generalist Herman gave Ms. Douglas three options: 1) resign; 2) "try again," which Ms. Douglas understood to mean to get a new doctor's note with different restrictions; or, 3) call The Hartford, Defendant's third-party benefits coordinator to begin the process of applying for medical leave and short-term disability benefits.

27.

In response, Ms. Douglas nearly pleaded for HR Generalist Herman to allow Ms. Douglas to continue working, and she even made suggestions on how her current duties could be modified.

28.

HR Generalist assured Ms. Douglas that the three options she had been presented (i.e., resign, modify restrictions, or take a leave of absence with short-term disability benefits) were consistent to what is offered to any pregnant employee.

29.

In response to this comment, Ms. Douglas stated, "Isn't there anything you can do to accommodate me?" And she suggested that Defendant allow her to sweep the warehouse floors, something that she been asked to do previously in her position.

30.

HR Generalist responded that Defendant was not required to make a job for Ms. Douglas.

31.

Ms. Douglas went home, and she applied for short-term disability benefits the same day.

32.

The next day, September 6, 2019, The Hartford provided notice to Ms. Douglas that her request for short-term disability benefits was going to be denied. The reason for the denial was that, for the same reason that Ms. Douglas was not eligible for leave under the Family and Medical Leave Act, her short-term disability was denied because she had not met the minimum hours worked or the minimum length of service.

33.

Upon Ms. Douglas' receipt of The Hartford's notice, she contacted Defendant and asked to speak to a supervisor in Human Resources, and she ultimately spoke to Human Resources Manager Rebecca Ashford (hereinafter, "HR Manager Ashford").

34.

HR Manager Ashford told Ms. Douglas that Defendant could not work with Ms. Douglas' restrictions and that they could simply not be accommodated.

35.

In response, Ms. Douglas confirmed that she was denied for short-term disability benefits, and Ms. Douglas explicitly, and repeatedly stated that she was refusing to resign from her position.

36.

In response, HR Manager Ashford stated:

At this point, what normally happens is, if you are denied from The Hartford and we cannot accommodate your restrictions, you will either have to resign and come back after you have your baby or the normal process will take its place, which means that you'll "point out" and we'll have to remove you from the schedule.

37.

Once again, HR Manager Ashford explicitly stated that Defendant would not accommodate Ms. Douglas' restrictions, and she instructed Ms. Douglas not to return to work with the same restrictions.

38.

Subsequently, Ms. Douglas received a Georgia Department of Labor Separation Notice, indicating that Ms. Douglas was terminated due to "Job Abandonment" on September 13, 2019.

39.

At no point did Ms. Douglas abandon her job, and Defendant's reason for the termination is false.

40.

Within two weeks of Ms. Douglas' termination, Defendant sought applications for the position previously held by Ms. Douglas.

41.

Upon information and belief, Defendant filled the position with someone who was neither pregnant, nor had any pregnancy-related medical conditions such as blood clotting.

Procedural/Administrative Background

42.

On or about October 4, 2019, Ms. Douglas submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that she had been subjected to discrimination based on sex, pregnancy, and disability in violation of Title VII of the Civil Rights Act and the Americans with Disabilities Act, respectively.  The EEOC assigned Ms. Douglas the Charge Number 410-2019-08561.

43.

Defendant had notice of Ms. Douglas' Charge of Discrimination, participated in the proceedings before the EEOC, and was presented by counsel during said proceedings.

44.

On March 17, 2021, the EEOC issued a Dismissal and Notice of Rights.

45.

Ms. Douglas has exhausted her administrative remedies and she is filing the instant action within ninety days of her receipt of the EEOC's Dismissal and Notice of Rights.

**COUNT I:**
**DISCRIMINATION BASED ON SEX**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

46.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 45, as if the same were set forth herein.

47.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such person's sex.  42 U.S.C. § 2000e-2(a).

48.

Plaintiff is considered in a protected class as her sex is female.

49.

As alleged herein, Plaintiff was qualified for the position that she held with Defendant, and her performance was exemplary at all times.

50.

Beginning on September 5, 2019, Plaintiff was able to work, and she had obtained a certification from her doctor reflecting the same.

51.

However, as alleged herein, Defendant refused to allow Plaintiff to work simply because Defendant learned that Plaintiff was pregnant.

52.

Defendant apparently has a policy or practice whereby Defendant denies accommodations for employees who become pregnant and requires said employees to either resign from their position or take a medical leave of absence if they qualify for short-term disability benefits.

53.

Defendant does not have a similar policy or practice for its male and/or non-pregnant employees, and Defendant does not deny such employees' requested accommodations or require them to either resign from their position or take a medical leave of absence if they qualify for short-term disability benefits.

54.

Defendant denied Plaintiff's repeated requests that she be permitted to return to work.

55.

On September 13, 2019, Defendant terminated Plaintiff from her position for "Job Abandonment."

56.

Defendant then held the position open, or reposted Plaintiff's position, while it continued to look for candidates to fill the position.

57.

Defendant will be unable to present any evidence of a legitimate nondiscriminatory motive for refusing to allow Plaintiff to return to work upon receiving notice that Plaintiff was pregnant, otherwise treating Plaintiff less favorably than her counterparts who not female and/or pregnant and terminating Plaintiff because of her pregnancy.

58.

Defendant's stated reason for the termination – that Plaintiff abandoned her job – is entirely without merit.

59.

Plaintiff will prove that the Defendant's stated reasons are pretextual and were indeed motivated by Plaintiff's sex.

60.

Plaintiff has been injured by Defendant's discrimination based on sex against her, and she is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay including fringe benefits, front pay, injunctive relief, compensatory and punitive damages in the amount of $300,000.00, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT II:**
**DISCRIMINATION BASED ON PREGNANCY**
**IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT**

61.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 45, as if the same were set forth herein.

62.

The Pregnancy Discrimination Act (hereinafter, "PDA") is an amendment to Title VII of the Civil Rights Act of 1964. Discrimination on the basis of pregnancy, childbirth, or related medical conditions constitutes unlawful sex discrimination under Title VII. Women affected by pregnancy or related conditions must be treated in the same manner as other applicants or employees who are similar in their ability or inability to work.

63.

The PDA provides that the prohibition against sex-based employment discrimination in § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), applies with equal force to discrimination on the basis of "pregnancy, childbirth, or related medical conditions." *See* 42 U.S.C. § 2000e(k). Further, the PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits. *Armstrong v. Flowers Hosp., Inc.,* 33 F.3d 1308, 1312-13 (11th Cir.1994).

64.

For the same reasons as those set forth in Count I, *supra*, Defendant treated Plaintiff differently than other persons who are not pregnant, but similar in their ability to work.

65.

As a result, Defendant subjected Plaintiff to discrimination based on her pregnancy by refusing to accommodate Plaintiff's medical condition, refusing to allow her to work, and ultimately terminating her employment, all in violation of the Pregnancy Discrimination Act.

66.

Plaintiff has been injured by Defendant's discrimination based on pregnancy against her, and she is entitled to all damages allowed under the Pregnancy Discrimination Act, including back pay including fringe benefits, front pay, injunctive relief, compensatory and punitive damages in the amount of $300,000.00, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT III:
## DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

67.

Plaintiff herby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 45, as if the same were set forth herein.

68.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

69.

Discrimination based on disability includes an employer's termination of the employee due to her disability. 42 U.S.C. § 12111.

70.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

71.

Specifically, Plaintiff was pregnant and developed a bleeding disorder related to her pregnancy substantially limited several major life activities for Plaintiff, including her ability to walk, stand, lift heavy objects, bend, and work.

72.

Plaintiff was perceived as having a disability by Defendant when Defendant became aware of Plaintiff's medical emergency on September 3, 2019, and sent Plaintiff to the emergency room, and upon her return, when Plaintiff requested reasonable accommodations for her medical condition and pregnancy.

73.

Plaintiff was hired as and was performing the duties in her role of DC Team Member or Material Handler, and she was otherwise qualified and able to perform the essential functions of her job, with or without reasonable accommodation.

74.

Defendant terminated Plaintiff in September 2019, and Plaintiff was replaced with an employee who was not pregnant and who did not have a pregnancy-related disability. The circumstances suggest that Plaintiff was terminated, not as a result of any supposed misconduct; rather, due to her pregnancy, pregnancy-related disability, or requests for an accommodation for said disability.

75.

Plaintiff has been injured by Defendant's discrimination due to her disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and

reasonable attorneys' fees and costs of litigation, in an amount to be proven at trial.

## COUNT IV:
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

76.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 45, as if the same were set forth herein.

77.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

78.

Discrimination based on disability includes an employer's failure to make a "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

79.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. *See* 42 U.S.C. § 12111.

80.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

81.

Specifically, Plaintiff was pregnant and developed a bleeding disorder related to her pregnancy substantially limited several major life activities for Plaintiff, including her ability to walk, stand, lift heavy objects, bend, and work.

82.

Plaintiff was perceived as having a disability by Defendant when Defendant became aware of Plaintiff's medical emergency on September 3, 2019 and sent Plaintiff to the emergency room, and upon her return, when Plaintiff requested reasonable accommodations for her medical condition and pregnancy.

83.

Plaintiff was hired as and was performing the duties in her role of DC Team Member or Material Handler, and she was otherwise qualified and able to perform the essential functions of her job, with or without reasonable accommodation.

84.

Plaintiff requested an accommodation for her disability on several occasions. Specifically, Plaintiff requested that she avoid lifting objects in excess of 25 pounds, and limit lifting, pushing, pulling, climbing ladders, standing, and that she be provided more frequent breaks.

85.

The accommodation requested was available, would have been effective, and would not have posed an undue hardship on Defendant. Moreover, the requested accommodation of allowing light duty work for Plaintiff would have allowed Plaintiff to meet Defendant's performance and productivity metrics and all other essential job functions.

86.

Defendant expressly refused to provide the accommodation.

87.

Defendant expressly refused to consider any alternatives to the reasonable accommodation requested by Plaintiff.

88.

Plaintiff was told by Defendant that, unless her doctor modified Plaintiff's restrictions or she was otherwise entitled to medical leave through Defendant's short-term disability benefit, her only other option was to resign from her position.

89.

Defendant refusal to provide a reasonable accommodation or engage in the interactive process, which meant that Defendant would not allow Plaintiff to return to work, which Defendant then cited as the basis for Plaintiff's termination.

90.

Plaintiff has been injured by Defendant's discrimination due to its failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Melissa Douglas respectfully prays for the following relief:

1) That Summons and Process be issued to Defendant Tractor Supply Company, and that said Defendant be served as provided by law;

2) That this matter be tried before a jury;

3) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for discrimination based on sex, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act;

4) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for discrimination based on pregnancy, and grant Plaintiff all relief allowable under the Pregnancy Discrimination Act;

5) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for discrimination based on disability in violation of the Americans with Disabilities Act and grant Plaintiff all relief allowable under said statute;

6) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under Americans with Disabilities Act;

7) For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 15th day of June, 2021.

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
jmm@cooperbarton.com

KENNETH E. BARTON III
Georgia Bar No. 301171
JOHN M. MCCALL
Georgia Bar No. 778954
*Attorneys for Plaintiff*